IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| SE PROPERTY HOLDINGS, LLC, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 19-0624-WS-C |
| | ) |
| RUSTON C. WELCH, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion to dismiss for lack of personal jurisdiction. (Doc. 14). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 14, 16-20, 21-1),[1] and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiff's predecessor loaned money to non-party Neverve, LLC ("Neverve"). David A. Stewart is half owner of Neverve and a guarantor of the loans to Neverve. In 2015, the plaintiff foreclosed on the defaulted loans and received a deficiency judgment of almost $20 million.

Stewart is also an owner or part owner of several other entities. In 2011, he and other individuals, along with most of these entities, entered an agreement to pledge all BP oil spill claims, and the proceeds therefrom, as collateral to the plaintiff's predecessor. Although Neverve is not named as a party to the agreement and is not within the defined term, "Affiliate," the plaintiff asserts that

---

[1] The plaintiff's motion for leave to file a sur-reply, (Doc. 21), is **granted**.

any BP claim and/or proceeds of Neverve were pledged as collateral under this agreement, giving rise to a security interest in any such proceeds.

In early 2015, the plaintiff placed Stewart in involuntary bankruptcy in Alabama, which proceeding was transferred to Oklahoma. The defendants (collectively, "Welch") are an Oklahoma attorney and his law firm. After his bankruptcy proceeding was transferred to Oklahoma, Welch became Stewart's bankruptcy counsel.

In January 2016, Stewart executed an agreement pursuant to which Welch would provide bankruptcy and other representation to Stewart's entities, including Neverve, and the entities guaranteed payment of Welch's legal fees, including those associated with Stewart's bankruptcy case. The plaintiff believes the guaranty is invalid because the permission of the trustee in Stewart's bankruptcy case (standing in Stewart's shoes as owner or co-owner) was not sought or obtained.

In 2016, Neverve retained an Alabama law firm ("Taylor Martino") to pursue its BP claim. Welch then entered a fee-sharing agreement with Taylor Martino with regard to the BP claims of certain of Stewart's entities, purportedly including Neverve. The plaintiff believes this agreement is invalid for want of the trustee's authorization.

The Neverve claim rapidly settled and, in August 2016, Taylor Martino wired from its IOLTA account to Welch's IOLTA account funds representing both Welch's share of the contingency fee on the BP claim and the net proceeds of the claim. Between August 2016 and September 2017, Welch transferred over $277,000 from the Welch IOLTA account to the firm account to cover attorney's fees for Welch's bankruptcy representation of Stewart.

The complaint asserts causes of action for fraudulent transfer under Alabama and Oklahoma law; conversion; civil conspiracy; unjust enrichment; constructive trust; and equitable lien.

# DISCUSSION

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal quotes omitted). "When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction," unless "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.* (internal quotes omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *accord Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).

An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary, not mandatory. *E.g., Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2008). Because the parties have not requested an evidentiary hearing, the Court exercises its discretion not to conduct one. Absent such a hearing, a plaintiff's burden is to present enough evidence, construed most favorably to him, to withstand a motion for directed verdict. *Id.*

A forum state's personal jurisdiction over a defendant may be either general or specific. The plaintiff does not invoke general jurisdiction, and it will not be considered.

> To determine whether the exercise of specific jurisdiction affords due process, we apply a three-part test. … First, we consider whether the plaintiffs have established that their claims arise out of or relate to at least one of the defendant's contacts with the forum. … Second, we ask whether the plaintiffs have demonstrated that the defendant purposefully availed itself of the privilege of conducting activities within the forum state. … If the plaintiffs carry their burden

> of establishing the first two prongs, we next consider whether the defendant has made a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018) (internal quotes and citations omitted). Like the *Waite* panel, the Court concludes that "specific jurisdiction is lacking here because the [plaintiff] failed to establish that [its] claims arise out of or relate to [Welch's] contacts in [Alabama]." *Id*.

"In this Circuit, we have held that a tort arises out of or relates to the defendant's activity in a state only if the activity is a but-for cause of the tort." *Waite*, 901 F.3d at 1314 (internal quotes omitted). The plaintiff acknowledges this standard. (Doc. 17 at 19). According to the plaintiff, "[w]ithout the co-counsel agreement and transfer of funds from Alabama, Defendants could not have committed the wrongful transfer of the BP claims proceeds at issue in this action." (*Id*.). It was the "fee sharing agreement with an Alabama law firm" that "directly led to Defendants' gaining access to Neverve's BP monies from Alabama and Defendants' opportunity to distribute/transfer/convert those monies to themselves." (*Id*.). The plaintiff thus relies on an attenuated form of but-for causation that the Eleventh Circuit has rejected.

In *Oldfield v. Pueblo de Bahio Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009), the Costa Rican defendant advertised its fishing village and resort on the internet. The plaintiff saw this advertising at his Florida home, booked a trip, and was injured in Costa Rica while aboard a third party's boat. *Id*. at 1214. The plaintiff argued that but-for causation was present because, but for the defendant's Florida advertising, he would not have gone to Costa Rica and gotten injured. *Id*. at 1223. "The problem with this but-for approach is that it is over-inclusive, making any cause of action, no matter how unforeseeable, necessarily 'related to' the initial contact." *Id*. The "related to" inquiry must instead "hew closely to the foreseeability and fundamental fairness principles forming the foundation upon which the specific jurisdiction doctrine rests." *Id*. at 1224. Thus, while "the

4

contact must be a 'but-for' cause of the tort, yet the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have fair warning that a particular activity will subject it to the jurisdiction of a foreign sovereign." *Id*. at 1223 (internal quotes omitted).

The *Oldfield* Court contrasted its factual scenario with that presented in *Securities and Exchange Commission v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997). There, "by purposefully making contacts within the forum that were necessarily related to or gave rise to the fraudulent activity, the defendant could reasonably foresee that it would cause harm within the forum and thereby had fair warning that it could be subject to suit in the [forum] based on the harm caused." 558 F.3d at 1223.

The fraudulent transfers made the basis of the plaintiff's lawsuit occurred when Welch periodically moved BP attorney's fees and proceeds from its IOLTA account to the firm account. (Doc. 1 at 21; *accord id*. at 23-24). The other claims as well are based on those transfers and on acts of concealing the receipt of the funds from Alabama. (*Id*. at 25-30; Doc. 17 at 5, 9, 17). That is, all the torts and other wrongs for which the plaintiff seeks redress occurred in Oklahoma, after the funds had transferred unremarkably from Alabama to Oklahoma. The plaintiff concurs with this assessment. (*Id*.).[2]

Nor did the plaintiff experience any injury in Alabama. The plaintiff did not own the disputed funds but had at best a security interest in them, and the plaintiff does not assert that it had any right to prevent the funds from leaving Alabama. Moreover, the plaintiff is an Ohio entity with its principal place of business in that state, (Doc. 1 at 1), and it has failed to address how any injury to it

---

[2] As noted, the plaintiff contends that Welch's fee-sharing agreement with Taylor Martino was "invalid," but it does not assert that Welch's acceptance into its IOLTA account of funds from Taylor Martino's IOLTA account was therefore wrongful. This is understandable, since the invalidity of a contract addresses only the contracting parties' enforceable rights and duties *inter se*, rendering the contract void or voidable. Black's Law Dictionary 371 (9th ed. 2009).

from movement of the funds to Oklahoma could be said to have occurred anywhere but in Ohio.

The plaintiff ignores *Oldfield*, even though Welch quoted its key passage. (Doc. 14 at 27). It is nevertheless incumbent on the plaintiff to articulate how Welch – which neither did anything wrongful in, or with respect to, Alabama nor caused injury to the plaintiff (or anyone else) in Alabama – had fair warning and should have reasonably foreseen that it could be haled into an Alabama court by an Ohio entity, with which it had no contact, for misconduct occurring only in Oklahoma. The plaintiff in its one-page "but-for" argument offers no explanation for such a remarkable proposition.[3] Its silence is fatal to its lawsuit, as the Court has and accepts no responsibility to craft and support jurisdictional arguments on the plaintiff's behalf.

The plaintiff does suggest that other contacts of Welch with Alabama "further cement the sufficiency" of its contacts for purposes of the first *Waite* element. (Doc. 17 at 20). It is unnecessary to address these contacts since, even if they are accepted as factually accurate,[4] they do not rectify the fundamental deficiency in the plaintiff's position.[5]

---

[3] If personal jurisdiction in Alabama existed in this case, it presumably would also exist as to an Oklahoma resident who worked in Alabama, returned home, received a check for his labor, and then wrongfully hid the income from his Ohio judgment creditor.

[4] The assertions that Neverve's BP claim was filed in Alabama, was litigated in Alabama, and was based on damages suffered in Alabama, (Doc. 17 at 8-9, 19), all appear to rest on misreadings of the record.

[5] That Welch assisted Taylor Martino with the BP claims of Neverve and other Stewart entities, (Doc. 17 at 9, 19), introduces neither Alabama misconduct by Welch nor Alabama injury to the plaintiff. Other contacts between Welch and Alabama lawyers, accountants and others, (*id*. at 11, 14, 20), patently fail even the attenuated "but-for" standard the plaintiff champions. What Welch did with the funds after allegedly misappropriating them, (*id*. at 11, 14, 20), could not possibly be a but-for cause of the misappropriation.

The parties address at length the second, "purposeful availment" prong of the Eleventh Circuit's test for personal jurisdiction. Because the plaintiff fails the first prong, the Court declines to address the second.

**CONCLUSION**

For the reasons set forth above, the defendants' motion to dismiss is **granted**. This action is **dismissed without prejudice** for want of personal jurisdiction.[6]

DONE and ORDERED this 6th day of December, 2019.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] A dismissal for lack of personal jurisdiction must be without prejudice, which "does not preclude further litigation of [the plaintiff's] claims on the merits" but which "does preclude that litigation from occurring in" the forum (here, Alabama) where dismissal occurred. *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999).